UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO.  16-CV-00035-JMH

JOHN LEE PERKINS,                                                                             PLAINTIFF

VS.        **ACTING COMMISSIONER'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT IN PART FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

CAROLYN W. COLVIN, Acting Commissioner                          DEFENDANT
     of Social Security.

\*\*\*\*\*\*\*

The Acting Commissioner (Commissioner) moves to dismiss Counts I, II, III, IV, V, and VI of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**MEMORANDUM IN SUPPORT OF ACTING COMMISSIONER'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT IN PART FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED**

**INTRODUCTION**

The Social Security Administration (SSA or agency) administers a massive benefit system that, among other things, provides disability benefits to persons who are disabled as defined by the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385.  SSA pays benefits to individuals who are entitled to them, but must simultaneously preserve program resources and protect the public fisc by ensuring that those funds are not erroneously paid to individuals who are not entitled.  Congress enacted sections 205(u), 1129(l), and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u)(1), 1320a-8(l), 1383(e)(7), as part of that program integrity effort.  Read together, these provisions require that as soon as SSA's Inspector General has reason to believe that fraud was involved in an individual's application for disability benefits, it must make that information

available to the agency, and the agency must "immediately redetermine" the individual's entitlement to benefits, and "disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." *Id.* If after conducting the redetermination, the agency determines that there is insufficient evidence to support the individual's entitlement to benefits, the agency "may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. §§ 405(u)(3), 1383(e)(7)(C).

Consistent with those statutory requirements, following an SSA Office of the Inspector General (SSA OIG) referral reporting that there was a reason to believe that fraud was involved in Plaintiff's application, SSA informed Plaintiff that it was redetermining the previous decision granting his disability benefits. As a result of that redetermination, the agency found that there was insufficient evidence supporting Plaintiff's entitlement at the time he was originally awarded benefits, and is in the process of terminating his benefits and assessing an overpayment. It is this decision that is properly before the Court for review under section 205(g) of the Act, 42 U.S.C. § 405(g).[1] Plaintiff's other claims are not.[2]

In his Amended Complaint, Plaintiff challenges the agency's redetermination of his entitlement to benefits under sections 205(u) and 1631(e)(7) of the Act on the following grounds:

- The Defendant violated Plaintiff's due process rights under the Fifth Amendment of the U.S. Constitution. For example, it is unconstitutional to deprive the

---

[1] Although § 405(g) applies only to judicial review of title II benefits determinations, the statute governing judicial review of title XVI cases, 42 U.S.C. § 1383(c)(3), expressly adopts § 405(g)'s standards. *See* 42 U.S.C. § 1383(c)(3). For ease of discussion, this brief will refer exclusively to § 405(g), on the understanding that the same analysis applies to § 1383(c)(3).

[2] Other cases with similar challenges have been filed in this and other district courts, and the Commissioner's similar motion to dismiss has been granted in each case decided thus far. *See Burchett v. SSA*, 7:16-cv-00062-HRW (E.D. Ky. July 6, 2016), ECF No. 13; *Hitchcock v. SSA*, 7:16 cv 00094-HRW (*Plaintiff's motion to vacate pending*) (E.D. Ky. July 26, 2016), ECF No. 9.

>Plaintiff of the benefits that he has a legitimate claim of entitlement to based on unproven allegations in a secret document that he has not been able to contest.
>
>- The Defendant violated the Administrative Procedure's Act's requirements of formal adjudication at 5 U.S.C. § 556(d)-(e). For example, the basis of the allegations of fraud has never been made part of the record and the Plaintiff has been deprived of an opportunity to present his defense.
>
>- The Defendant violated the Social Security Act's requirements for hearings at 42 U.S.C. § 405(b)(1). For example, the Defendant has not made findings of fact with regard to the contested issue of fraud and has never set forth a discussion of the evidence or even adduced the evidence in the Plaintiff's hearing.
>
>- The Defendant violated the Administrative Procedure's Act's requirement at 5 U.S.C. § 554(d) that the adjudicator not "be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency." For example, because the Office of Inspector General performs investigative functions, its conclusion that there is reason to believe that fraud or similar fault was involved in Plaintiff's application for benefits cannot legally direct the adjudicator's finding.
>
>- The Defendant violated the Social Security Act's requirement at 42 U.S.C. §§ 405(u)(1)(A) and 1383(e)(7)(A)(i) that redetermination hearings be initiated "immediately" upon reason to believe that fraud or similar fault was involved. For example, the apparent basis of the "reason to believe" was known to Defendants' predecessors and their subordinates in 2006, the same time that Plaintiff's applications were being originally adjudicated. Plaintiff is aware of no written statement from a prosecutor that would excuse such delay by the Defendant.
>
>- The[D]efendant violated the Social Security regulations reopening requirements at 20 C.F.R. §§ 404.987-88. For example, a decision can be reopened after four years from the date of the decision only if the Defendant proves it was actually obtained by fraud or similar fault(not just that the Defendant has "reason to believe[]").

(ECF No. 21-1, Amended Complaint (Am. Compl.), Counts I-VI, ¶¶ 16-27). And in his Prayer for Relief, Plaintiff requests that the "decisions of the Defendant to subject the Plaintiff to the redetermination hearing and terminate Plaintiff's benefits be vacated for violating Plaintiff's rights under the Constitution, statutes, or regulations" (Am Compl., Prayer for Relief ¶ 4). These counts must be dismissed because Plaintiff's claims fail as a matter of law. SSA's actions are fully consistent with the relevant statutory sections, sections 205(u) and 1631(e)(7) of the

3

Act, 42 U.S.C. §§ 405(u), 1383(e)(7), as well as the Constitution. Defendant will separately request this Court for an extension of time to answer Plaintiff's remaining Count. *See Compton v. City of Harrodsburg*, 287 F.R.D. 401, 402 (E.D. Ky. 2012) (holding that filing a partial motion to dismiss extends the time to file a responsive pleading with respect to all claims, including those not addressed in the motion).

## BACKGROUND

As Plaintiff averred in his Complaint, he was found disabled by an administrative law judge (ALJ) in July 2007. The ALJ issued a fully favorable decision without a hearing by relying on evidence from Dr. Frederic Huffnagle (ECF No. 15-1, Exhibit A: Declaration of Kelly Salzmann at ¶ 2, Attachment 1 (Salzmann Decl.)). At the time, Plaintiff was represented by Eric C. Conn, an attorney representative (*id.*).

Plaintiff's lawsuit arises out of the redetermination process set forth in sections 205(u) and 1631(e)(7) of the Act. Those sections require SSA to "immediately redetermine" an individual's entitlement to benefits whenever there is "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits" and, in the process, to "disregard any evidence" if there is reason to believe that fraud or similar fault was involved in providing that evidence. 42 U.S.C. §§ 405(u)(1), 1383(e)(7)(A). "If, after redetermining pursuant to this subsection the entitlement of an individual to monthly insurance benefits, the Commissioner of Social Security determines that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 405(u)(3); *see also* 42 U.S.C. § 1383(e)(7)(C).

Under the redetermination process, if the case is remanded to an administrative law judge (ALJ) for a hearing, individuals may submit statements or evidence up to the date of their

4

hearing in support of the original disability determination, regardless of whether the individual previously submitted that evidence to the Appeals Council. Social Security Ruling (SSR) 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016). If the ALJ issues a decision finding that an individual was not entitled to benefits at the time he or she was originally awarded benefits, that individual's benefits will then be terminated. The individual may subsequently request review by the Appeals Council. *See* 20 C.F.R. §§ 404.967-68, 416.1467-68. If the Appeals Council issues a decision, that decision will constitute the final agency decision. *Id.* § 404.981, 416.1481. If the Appeals Council decides not to review the ALJ's decision, the ALJ's decision will constitute the final agency decision. *Id.* In either situation, a dissatisfied individual may then seek judicial review. 42 U.S.C. § 405(g)-(h); *see also id.* § 1383(c)(3).

On May 12, 2015, pursuant to section 1129(l) of the Social Security Act (Act), 42 U.S.C. § 1320a-8(l), SSA OIG informed the agency that there was reason to believe that fraud was involved in the applications for benefits of approximately 1,800 individuals (Salzmann Decl. at ¶ 3, Attachment 2). Specifically, SSA OIG had reason to believe that Mr. Conn or his firm submitted pre-completed "template" Residual Functional Capacity forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of the individuals' applications for benefits[3] (*Id.*).

Following receipt of this information, SSA was required by statute to redetermine those individuals' entitlement to benefits in accordance with section 205(u) of the Act. 42 U.S.C. § 405(u). Plaintiff was one of those individuals. Shortly after the SSA OIG's referral, on May

---

[3] Mr. Conn, Dr. Adkins, and former Huntington Hearing Office Administrative Law Judge David Daugherty were recently charged in an 18-count indictment returned on April 1, 2016 in the U.S. District Court for the Eastern District of Kentucky. *See* Indictment, *U.S. v. Conn, et al.*, 5:16-cr-22 (E.D. Ky. April 1, 2016), ECF No. 1.

5

18, 2015, SSA notified Plaintiff that there was reason to believe fraud or similar fault was involved in his application for benefits, and that SSA was required to redetermine his entitlement to benefits under section 205(u) and disregard the evidence from the four doctors (Salzmann Decl. at ¶ 4, Attachment 3). SSA invited Plaintiff to submit more evidence or a statement about the facts or law in his case (*Id.*). On July 13, 2015, SSA notified Plaintiff that it had considered any evidence submitted along with the other evidence of record, but that there was insufficient evidence to support the prior ALJ's decision (Salzmann Decl. at ¶ 5, Attachment 4). SSA remanded Plaintiff's case to a new ALJ for a hearing and a new decision (*Id.*).

The ALJ conducted a hearing on November 12, 2015, at which Plaintiff appeared with a new representative (Salzmann Decl. at ¶ 7). After considering the hearing testimony and relevant evidence, the ALJ concluded that there was insufficient evidence in the administrative record to support Plaintiff's original entitlement to benefits (Salzmann Decl. at ¶ 7, Attachment 5). This decision became the agency's final decision when the Appeals Council (AC) denied Plaintiff's request for review on January 28, 2016 (Salzmann Decl. at ¶ 7, Attachment 6).

Plaintiff filed his complaint with this Court on March 25, 2016 (ECF No. 1), and served the Acting Commissioner on April 6, 2016. Plaintiff filed his amended complaint on July 19, 2016 (Am. Compl.).

## STANDARD OF REVIEW

Defendant moves to dismiss count I, II, III, IV, V, and VI of Plaintiff's Amended Complaint under Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim. Under this rule, the Court may consider well-pleaded factual allegations, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Greenberg v. Life Ins. Co. of Virginia*,

6

177 F.3d 507, 514 (6th Cir. 1999). Although the Court must accept all well-pleaded factual allegations as true, it need not accept "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

In his Amended Complaint, Plaintiff requests "[t]hat the decisions of the Defendant to subject the Plaintiff to the redetermination hearing and terminated Plaintiff's benefits be vacated for violating Plaintiff's rights under the Constitution, statute or regulations" (Am. Compl. Prayer for Relief ¶ 4 & ¶¶ 16-27). Contrary to Plaintiff's challenges, SSA's actions are fully consistent with the relevant statutory sections of the Act, 42 U.S.C. §§ 405(u), 1320a-8(1), 1383(e)(7), the Administrative Procedure Act (APA), 5 U.S.C. § 551 et. seq., and the Constitution.

### A. Counts One, Two, and Three Should Be Dismissed Because the Redetermination Did Not Violate the Due Process Clause of the Fifth Amendment, the APA, or the Social Security Act.

Plaintiff argues that the redetermination process violated his rights under the Constitution and the APA because "[t]he basis of the allegations of fraud has never been made a part of the record, and the Plaintiff has been deprived of an opportunity to present his defense" (Am. Compl. ¶ 19). Plaintiff also contends that such actions by the agency violate section 205(b)(1) of the Act, 42 U.S.C. § 405(b)(1), because SSA has not made an adjudicated finding of fraud prior to taking action on Plaintiff's case (Am. Compl. ¶ 21).

Plaintiff plainly mischaracterizes the redetermination process under sections 205(u) and 1631(e)(7) of the Act. SSA has not found that Plaintiff engaged in fraud nor has it terminated Plaintiff's benefits based on an alleged "secret document" (Am. Compl. ¶ 17). By law, the

7

agency cannot terminate an individual's benefits based on suspected fraud alone. 42 U.S.C. §§ 405(u), 1383(e)(7)(C); *see, e.g.*, SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016).

However, Congress did not want the agency to ignore "suspected fraud" either. "When the government suspects that it has been defrauded, it takes action." *Martin v. Colvin*, Case No. 15-46-ART, 2016 WL 1305891, at *1 (E.D. Ky. Apr. 1, 2016), *pending appeal*, No. 16-5527 (6th Cir. filed Apr. 20, 2016). Congress directed the agency to "immediately redetermine" the individual's entitlement to benefits, and "disregard any evidence if there is *reason to believe* that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(A) (emphasis added);[4] *see also Martin*, 2015 WL 7202484, at *4 (November 16, 2015) (holding that in redetermining plaintiffs' entitlement, and disregarding "allegedly fraudulent medical evidence," "SSA obeyed its statutory commands.").

While Congress compelled the agency to act based on "suspected fraud," it may only terminate Plaintiff's benefits if, *after* disregarding Dr. Huffnagle's evidence, SSA determines that

---

[4] The legislative history shows that Congress was frustrated with the agency's inability to act immediately based on "suspected" fraud uncovered during a criminal investigation. In introducing H.R. 4277, Representative Santorum summarized the fraud scheme that prompted the bill as well as the purpose of the new legislation.

> [W]hat we found in this case was, even though this fraud was perpetrated, and 14 people were indicted by California in this fraud case, there were 2,000 people who started to receive benefits in 1993 . . . and yet, the Social Security Administration failed to do one redetermination . . . of any one of these 2,000 people who were involved in this fraud case.
>
> We subsequently, through the work of the subcommittee, convinced Social Security that redeterminations should be done when people who are put on SSI are suspected to [sic] being on there fraudulently. You would think that that would be an obvious case, but it, in fact, took the work of the subcommittee to get them to do it.
>
> Now we are going to put in statute that anytime you have *a suspicious [sic] of fraud* of someone who gets on the SSI rolls that we will have an immediate redetermination by the Social Security Administration.

140 Cong. Rec. H4750-03, H571, 1994 WL 274789 (emphasis added).

8

there is insufficient evidence supporting Plaintiff's entitlement. 42 U.S.C. §§ 405(u)(3), 1383(e)(7)(C). Before it made this determination in Plaintiff's case, the agency offered Plaintiff the opportunity for a hearing before a neutral decisionmaker and to submit additional evidence supporting his entitlement to benefits (Salzmann Decl. ¶ 6). *See* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016) ("During the redetermination, we will consider evidence that was provided absent fraud or similar fault, and that relates to the individual's entitlement and eligibility from the time of the individual's original allowance, even if that evidence was not presented previously."). The agency will even assist in obtaining evidence if Plaintiff requests assistance. *See* HALLEX I-1-3-25 (updated Feb. 25, 2016) (SSA will develop evidence when "[a] beneficiary requests assistance in developing records that he or she indicates are new, material, and related to the period at issue, and the record does not show that SSA previously made every reasonable effort to develop the same evidence").

Further, even before Plaintiff's benefits are terminated, he is entitled to file a new application. *See* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016). If his benefits are terminated, and SSA's assesses an overpayment, he may also seek a waiver of that overpayment. *See* 42 U.S.C. § 404(b) ("In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience."). These ample procedural protections mitigate against the risk of erroneous deprivation of benefits which is at the heart of Plaintiff's process-based challenges.

In addition, it is clear from the statutory scheme that SSA OIG's "reason to believe" that fraud was involved in the application process triggers the agency's obligation to take action

9

based on that information. Under section 1129(l) of the Act, 42 U.S.C. § 1320a 8(1), which was enacted along with sections 205(u) and 1631(e)(7), Congress directed the SSA OIG to notify the agency once it had reason to believe that fraud was involved in the application of an individual for monthly insurance benefits under title II or for benefits under title VIII or XVI. As the legislative history of section 1129(l) indicates, "[f]ollowing the initial receipt, or discovery during the course of a criminal investigation, of information that an individual or individuals may have fraudulently obtained SSI benefits, SSA OIG would undertake such steps as necessary to determine the validity, veracity and viability of such information" and must disclose that information to the agency at the point in time that "the OIG has reason to believe that an individual or individuals have fraudulently obtained SSI benefits." H.R. Rep. No. 103-506, at 85 (1994), reprinted in U.S.C.C.A.N. 1494; *see also* H.R. Conf. Rep. No. 103-670, at 147 (1994), reprinted in U.S.C.C.A.N. 1553.

Consequently, section 205(b)(1) of the Act does not apply here because initiating redeterminations in these cases was not a decision made by the Commissioner. As explained above, the decision that there is a "reason to believe" that fraud may be involved is made by SSA OIG under the authority granted in section 1129(l) of the Act. Moreover, the process that the agency is providing Plaintiff comports with procedural protections provided under the sections Plaintiff cites and to the extent there are differences, those differences are due to the nature and purpose of the redetermination statute. Here, SSA has acted consistently with the statutory scheme designed to protect the integrity of the entitlement program while providing Plaintiff with procedural protections that amply comport with any due process requirements. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("Due process [requires] the opportunity to be heard at a meaningful time in a meaningful manner"); *id.* at 340 (due process does not require

10

evidentiary hearings prior to termination of disability benefits); *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (requiring that welfare recipients receive the opportunity for a pre-termination hearing that comports with "minimum procedural safeguards, adapted to the particular characteristics of welfare recipients, and to the limited nature of the controversies to be resolved").

**B.      Counts Two and Four Should Be Dismissed Because the Redetermination Did Not Violate the APA.**

Plaintiff also argues the agency's actions in his case violated the APA in two ways. Plaintiff asserts that the APA's formal adjudication requirements apply to the redetermination process under sections 205(u) and 1631(e)(7) (Am. Compl. ¶ 19). This claim is erroneous. The APA's formal hearing requirements are limited to adjudications "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a); *see also Crestview Parke Care Ctr. v. Thompson*, 373 F.3d 743, 748 (6th Cir. 2004) ("Agencies need only employ this set of formal adjudication procedures if there is an adjudication required by statute to be determined on the record after opportunity for an agency hearing." (citations omitted)). Under section 205(u) of the Act, the agency must "immediately" redetermine an individual's entitlement to benefits if there is reason to believe that fraud or similar fault was involved in that person's application for benefits. When it conducts a redetermination, the agency is required to "disregard any evidence if there is reason to believe that fraud or similar fault was involved in providing such evidence." Sections 205(u) and 1631(e)(7) do not require a hearing prior to a redetermination—let alone a hearing "on the record"—and thus the APA's formal adjudication requirements do not apply. Nevertheless, as previously explained, the agency is providing Plaintiff with a number of procedural protections including a hearing before an ALJ and the

11

opportunity to provide evidence during that hearing to establish that he was entitled to benefits at the time of the application.

Plaintiff also contends that adjudicators are effectively being directed by investigators or prosecutors in initiating redeterminations (Am. Compl. ¶ 23). Again, Plaintiff mischaracterizes the statute. An OIG referral under section 1129(l) of the Act simply triggers a process—it does not direct an outcome. As discussed above, it was Congress who directed SSA OIG to provide information to SSA based on its reason to believe that fraud was involved in individuals' applications, and Congress who directed SSA to conduct redeterminations upon receipt of this information. *See* 42 U.S.C. §§ 405(u)(1)(A), 1320a-8(l), 1383(e)(7)(A)(i). Importantly, Congress vested exclusive authority in the Commissioner to decide the ultimate issue regarding termination of benefits and assessment of an overpayment. SSA OIG has no role in that determination—let alone the authority to direct such a decision. *See* 42 U.S.C. §§ 405(u)(3), 1383(e)(7).

Plaintiff's APA claims lack merit.

C. **Count Five Should Be Dismissed Because the Redetermination Did Not Violate 42 U.S.C. §§ 405(u)(1)(A) and 1383(e)(7)(A)(i).**

Plaintiff argues that SSA violated the Act's requirement that redetermination hearings be initiated "immediately" upon there being a reason to believe fraud or similar fault was involved in Plaintiff's original application for benefits (Am. Compl. ¶ 25). However, sections 205(u) and 1631(e)(7) of the Act specifically contemplate that the agency delay taking adverse action if it would jeopardize the criminal prosecution of a person involved in the suspected fraud. *See* 42 U.S.C. §§ 405(u)(1)(A), 1383(e)(7)(A)(i). And as discussed above, OIG may delay referring cases to the agency for the same reason. 42 U.S.C. § 1320a-8(l). Here, as contemplated by the

statute, SSA waited to notify Plaintiff that his benefits would be redetermined until it received a referral from the SSA OIG permitting it to take such action.

On May 12, 2015, the agency received a referral from the SSA OIG pursuant to section 1129(1) of the Social Security Act, 42 U.S.C. § 1320a 8(1), informing SSA that it had reason to believe that fraud had been involved in 1,787 individuals' applications for benefits under titles II and XVI (Salzmann Decl. ¶ 3). In each of these cases, the referral stated that the OIG had reason to believe that Mr. Conn or his firm submitted pre-completed "template" forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of each individual's application for benefits (*id.*). The OIG informed the SSA that it could proceed to take adverse action as a result of its redetermination of the cases under sections 205(u) and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u), 1383(e)(7) (id.). Soon thereafter, SSA began to notify the affected individuals of the redeterminations, and that their cases would be remanded to an ALJ for further proceedings and a new decision (Salzmann Decl. ¶¶ 4, 5).

Thus, not only is there absolutely no merit to Plaintiff's assertion that the agency did not act in a timely manner, but even if there was some delay, there is no support in the statute for the proposition that delay somehow limits SSA from exercising its statutory mandate to redetermine entitlement to benefits if there is suspected fraudulent information in the application for those benefits. It does not follow (nor make sense) that any delay completely bars SSA from effectuating its statutory mandate to redetermine entitlement for benefits when there is a reason to believe that there was fraud in the application for those benefits. *See Brock v. Pierce Cty.*, 476 U.S. 253, 259 (1986) (persuaded that "courts should not impute to Congress the desire to remedy

. . . a failure [to act timely] by preventing the Secretary from protecting both the public fisc and the integrity of a Government program.").

D. **Count Six Should Be Dismissed Because the Redetermination Did Not Violate the Social Security Reopening Rules.**

Plaintiff claims that the agency's reopening regulations govern the redetermination process under sections 205(u) and 1631(e)(7) of the Act. However, the regulations referenced by Plaintiff that govern "reopenings" are not applicable to the "redeterminations" being conducted in accordance with sections 205(u) and 1631(e)(7). In a recent ruling in a related case, the court denied plaintiffs' motion to enjoin redeterminations for failing to follow the reopening regulations holding:

> Defendant is exercising authority under 42 U.S.C. § 405(u), following a referral by the OIG pursuant to 42 U.S.C. § 1320a-8. As parts of the same legislative enactment, these statutes provide Defendant with authority to redetermine a claim when there is "reason to believe" fraud was involved. 42 U.S.C. § 405(u). Congress labeled this authority a "redetermination"; therefore, Defendant need not act under the authority required to "reopen" a claim.

*Robertson v. Colvin*, No. 3:16-cv-02113, 2016 WL 3406134, * 2 (S.D. W. Va. June 17, 2016).

Here, the agency notified Plaintiff that the redetermination process under sections 205(u) and 1631(e)(7) of the Act was being followed because there was reason to believe that fraud was involved in certain cases that included evidence from one of four medical professionals (Salzmann Decl. ¶¶ 4, 5, 7, Attachments 3, 4, 5). Under those sections, Congress mandated that SSA "shall immediately *redetermine* the entitlement of individuals to monthly insurance benefits . . . if there is a reason to believe that fraud or similar fault was involved in the application of the individual for such benefits . . . ." 42 U.S.C. § 405(u)(1)(A) (emphasis added); *see also* 20 C.F.R. § 1383(e)(7)(A)(i). That Congress intended there to be a distinction between redeterminations and reopenings is supported by the fact that Congress was well aware of the

14

agency's reopening rules but chose not to call the review under sections 205(u) and 1631(e)(7) a "reopening" of the prior decision but a "redetermination," and also by the legislative history, which shows that Congress enacted sections 205(u) and 1631(e)(7) precisely because it believed that the reopening rules were "cumbersome and unworkable" in addressing cases of fraud in applications for benefits. As the legislative history makes clear, the premise behind sections 205(u), 1129(l), and 1631(e)(7) was that it made sense to create a more streamlined process for cases of widespread fraud than the "reopening" process that already existed. Moreover, it makes little sense to read sections 205(u) and 1631(e)(7) as requiring thousands of mini trials on fraud by multiple fact finders where there is no hint of any such requirement or that Congress intended SSA to use the same exact process for large fraudulent schemes as it does for fraud on an individual basis.

Because SSA is following the redetermination process required by sections 205(u) and 1631(e)(7), not the reopening regulations referred to in the Amended Complaint, Plaintiff's allegations that SSA has violated the reopening regulations are irrelevant, and Count Six must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Counts One, Two, Three, Four, Five and Six of Plaintiff's Amended Complaint with prejudice.

                      Respectfully submitted,

                      KERRY B. HARVEY
                      UNITED STATES ATTORNEY

By:   /s/ John S. Osborn, III
       JOHN S. OSBORN, III
       Assistant United States Attorney
       260 W. Vine Street, Suite 300
       Lexington, Kentucky 40507-1612
       Phone: (859) 685-4812
       Facsimile: (859) 233-2533
       John.Osborn@usdoj.gov

Of Counsel for the Defendant:

John Lee, Regional Chief Counsel, Denver
Meghan Frei Berglind, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region VIII
1961 Stout Street, Suite 4169
Denver, Colorado 80294-4003

## **CERTIFICATE OF SERVICE**

  I certify that on August 23, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant, Evan Smith, Esq., Counsel for Plaintiff.

                      /s/ John S. Osborn, III
                      JOHN S. OSBORN, III
                      Assistant United States Attorney